EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ANTONIO RODRÍGUEZ, acusado y apelante.

No. 2779.—*Visto:* Junio 4, 1926. *Resuelto:* Julio 8, 1926.

1. ALIMENTOS *(Food)* — PAN — REGLAMENTOS DE SANIDAD —- INTERPRETACIÓN — "ADULTERADO", DEFINIDO.—En el caso de autos se define la palabra *adulterado* en la acepción usada en la sección 1 del Reglamento de Sanidad No. 53 sobre almacenaje y venta de alimentos y drogas en la Isla promulgado en mayo 10, 1917.
2. ALIMENTOS *(Food)*—PAN—CONTRAVENCIÓN A LOS REGLAMENTOS DE SANIDAD— PROCESO Y CASTIGO—DENUNCIA—SUFICIENCIA DE LA MISMA.—En esta causa por infracción al artículo 1 del Reglamento de Sanidad No. 53, *se resolvió:* que la acusación no imputaba debidamente la infracción, y en todo caso que la prueba no fué suficiente.

SENTENCIA de *Angel Acosta Quintero,* J. (Ponce), condenando al acusado por infracción al reglamento de Sanidad No. 53. *Revocada* y absuelto el acusado.

*Rafael Arjona Siaca,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

La acusación en este caso, tal como fué presentada, en lo pertinente, dice:

"Que en 11 de agosto del 1925 y en la calle Buena Vista del Distrito Judicial Municipal de Yauco, que forma parte del Distrito Judicial de Ponce, Puerto Rico, el acusado arriba mencionado que es dueño de una panadería donde se elabora pan para la venta y consumo público, de una manera ilegal, maliciosa y voluntaria, allí y entonces elaboró y vendía pan adulterado con ácido según certificación del Director del Laboratorio Químico Dr. R. del Valle Sárraga, donde en fecha 11 del mes de agosto se mandó una muestra oficial bajo el No. 41132, y resultó adulterado con el 8.41 por ciento de acidez y mal elaborado resultando nocivo a la salud del público consumidor y en contravención a las disposiciones del art. 1 del Reglamento de Sanidad No. 53."

Al llamarse la causa para la vista, el acusado pidió a la corte que ordenara la eliminación de toda aquella parte de la acusación que comienza en "según certificación" y termina en "Sanidad No. 53," y la corte accedió. De suerte que las palabras "resultando nocivo a la salud del público consumidor" quedaron eliminadas.

Se practicó la prueba consistente en la declaración de Manuel Vidal, jefe local de Sanidad, que se limitó a decir que había ocupado el pan en la panadería del acusado y lo había enviado al Laboratorio Insular, y en la del Químico Auxiliar del Laboratorio Sr. Gadea, que reconoció el informe del Laboratorio y explicó cómo se llegaba a la conclusión que contenía. Ni una palabra dijo con respecto a que el pan fuera nocivo a la salud o impropio como alimento. El informe, también introducido como prueba, contiene la siguiente "Conclusión: Ácido, mal elaborado," y fija como acidez: "8.41 por 10 gramos." No dice que el pan estuviera adulterado, ni que fuera impropio como alimento, o nocivo a la salud. Tampoco que la acidez fuera mayor que el *standard* que pudiera haberse fijado de acuerdo con la ley.

Esa fué la prueba de cargo. No hubo prueba de descargo. Y la corte al dictar su fallo condenatorio dijo que declaraba culpable al acusado "por entender que de la prueba practicada y de acuerdo con el examen que se hizo en el Laboratorio ese pan era nocivo a la salud por tener exceso de acidez."

El precepto por cuya infracción se acusó y condenó al apelante es el artículo 1 del Reglamento de Sanidad No. 53, sobre almacenaje y venta de alimentos y drogas en la Isla de Puerto Rico, promulgado en 10 de mayo de 1917. Dice así:

"Art. 1.—Ninguna persona, sindicato, corporación, institución de cualquier carácter que sea, venderá, ofrecerá, expondrá en venta o tendrá para la venta, hará conducir o almacenará alimento o droga alguno, para el consumo en la Isla de Puerto Rico, que esté adulterado o falsamente rotulado, dentro del concepto legal que se define en este Reglamento, y que es el mismo que se expresa en los artículos **7 y 8 de la Ley de Alimentos y Drogas**, aprobada por el Congreso de los Estados Unidos, en junio 30, 1906."

[1] "Adulterated," en la acepción que guarda relación con este caso significa según el Webster's New International Dictionary, *"debased by the admixture of a foreign substance; adulterated; hence, spurious; counterfeit,"* y "adulterar", según el Diccionario Enciclopédico de la Lengua Castellana por Zerolo, también en relación con la acepción que guarda relación con este caso, significa: "viciar, falsificar alguna cosa."

La ley federal a la que se refiere el Reglamento, en su sección 7 establece seis diferentes grupos de casos en que alimentos se considerarán adulterados a los efectos de la ley. En los cinco primeros los elementos de mezcla, adición, extracción, sustitución o variación, más o menos esenciales al concepto de adulteración, existen. El sexto es como sigue:

"Seis.—Si está compuesto en todo o en parte de un animal o substancia vegetal, sucio, descompuesto, o putrefacto, o de cualquier porción de un animal impropio para ser usado como alimento, esté o no manufacturado, o si es el producto de un animal enfermo, o de

uno que ha muerto por otra causa distinta a la matanza.'' Federal Food and Drugs Act and Decisions, compiled by C. A. Gwinn, pag. 11.

Dentro de este grupo sexto podría quizá comprenderse este caso, pero la acidez del pan tendría que ser de tal naturaleza que implicara por lo menos descomposición.

[2] Aquella parte de la acusación que tendía a expresar ese concepto en palabras más o menos llanas susceptibles de ser entendidas por un acusado vulgar, a saber: ''resultando nocivo a la salud del consumidor,'' fueron eliminadas, y en la prueba, en lenguaje corriente, nada dijeron los testigos con respecto a que el pan de que se trata estuviera descompuesto y fuera impropio para ser usado como alimento. A menos que deba concluirse que el grado de acidez fijado en el examen necesariamente establece la conclusión de la descomposición del pan y de su impropiedad como alimento—y ello no nos ha sido demostrado por el fiscal—debe concluirse que la prueba fué por lo menos deficiente.

Muchas leyes prescriben determinado *standard* para ciertos artículos y si la prescripción no se cumple se considera el artículo adulterado irrespectivamente de si algo se le ha añadido o quitado o de si es en sí mismo o nó impropio para el consumo. Ejemplo: la adulteración de leche. Ley y jurisprudencia de Puerto Rico. Véase 3 C. J. 2.

Además de lo que hemos indicado dijo el químico Gadea que tenía conocimiento por la literatura sobre el particular, que tres y medio o cuatro por ciento grados era la acidez fijada al pan como máximo y que el laboratorio de la Isla ''más benévolo concedía hasta cinco y medio grados,'' pero el propio químico también dijo que no tenía conocimiento de que el acuerdo del laboratorio hubiera sido sancionado y publicado.

Bajo cualquier aspecto, pues, que se examine este caso, es necesario concluir que dados los términos de la acusación y lo deficiente de la prueba, *se impone la revocación de la sentencia recurrida y la absolución del acusado.*